**SOUTH SHORE BANK, Plaintiff,**

v.

**INTERNATIONAL JET INTERIORS, INC., Defendant.**

**No. CV 89–0292.**

United States District Court, E.D. New York.

Sept. 20, 1989.

---

Otterbourg, Steindler, Houston & Rosen, New York City, for plaintiff.

Lichenstein & Schindel, Mamaroneck, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This declaratory judgment action was commenced by plaintiff South Shore Bank (the "Bank") to determine the validity of a lien filed against an airplane by defendant International Jet Interiors, Inc. ("IJI"). Presently before the Court are the Bank's motions to dismiss IJI's counterclaims and for summary judgment. For the reasons set forth below, the Bank's *motion to dismiss* the counterclaims is granted and decision on the summary judgment motion is reserved pending a hearing.

### I. *Background*

On June 6, 1988 the Bank extended an $11.8 million loan to LTD Industries, Inc. ("LTD"). As a condition of that loan, the Bank obtained a security interest in a 1982 Gulfstream American Airplane (the "Airplane"). Shortly after extending the loan to LTD the Bank filed notice of its security agreement with the Federal Aviation Administration ("FAA") and on June 19, 1988

the agreement was recorded with that agency.

On or about June 20, 1988 defendant IJI was hired by LTD to refurbish the interior of the Airplane at a cost of $247,200. Although IJI completed the job, LTD never paid IJI for the work performed.

Meanwhile, LTD defaulted on its obligations pursuant to the loan agreement and the Bank commenced foreclosure proceedings. On October 7, 1988 the Bank repossessed the Airplane and began to search for a buyer. In connection with the planned sale, the Bank searched FAA records and discovered that in September of 1988 IJI attempted to file a notice of lien with the Clerk of Morris County, New Jersey (the "September Notice"). The September Notice stated that IJI's work on the airplane took place in the State of New York and that the debt became due on June 20, 1988. Documents presently before the Court reveal that the FAA refused to record IJI's notice because, in contravention of FAA regulations, the lien was not filed in the state where the work giving rise to the lien was stated to have been performed.

Notwithstanding the FAA's rejection of IJI's notice, the Bank, in a letter dated October 26, 1988, gave IJI notice of its intention to sell the Airplane at a private sale. After receiving notice of the Bank's intention to sell the Airplane, IJI filed a second notice of lien with the Clerk of Morris County, New Jersey. That notice is dated November 18, 1988 (the "November Notice"). The November Notice claims, unlike the September Notice, that work performed by IJI on the Airplane took place in the State of New Jersey and that LTD's debt to IJI became due on September 25, 1988. IJI submitted the November Notice to the FAA for filing and that agency recorded the lien on December 8, 1988. The recording of the November Notice placed a cloud upon title to the Airplane that made it impossible for the Bank and the buyer of the Airplane to consummate the planned sale. In an effort to clear title to the Airplane, the Bank commenced this declaratory judgment action seeking to have IJI's lien declared invalid.

Shortly after commencement of this action, the parties entered into a stipulation that allowed the sale of the Airplane to be consummated while keeping the controversy surrounding the validity of IJI's lien alive. Specifically, the parties' stipulation provides for the release of the November Notice, the sale of the Airplane and the issuance of a letter of credit in an amount sufficient to pay IJI any judgment that is ultimately rendered.

## II. *The Motions*

### A. The Bank's Motion to Dismiss IJI's Counterclaims

The Bank has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss IJI's counterclaims. When considering such a motion the Court must construe all facts in favor of the non-moving party and the motion will not be granted unless it appears that the pleader can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Young v. Calhoun*, 656 F.Supp. 970, 972 (S.D.N.Y.1987); *Aeronca, Inc. v. Gorin*, 561 F.Supp. 370, 375 (S.D.N.Y.1983). Here, IJI has set forth three separate counterclaims. In light of the above-referenced standards, the Court turns to determine the sufficiency of defendant's counterclaims.

### i. *The First Counterclaim*

■ IJI's first counterclaim states, upon information and belief, that when the Bank extended the $11.8 million loan to LTD the Airplane was not worth more than $10 million. The counterclaim goes on to state that the Bank was aware that LTD delivered the Airplane to IJI for refurbishing and "allowed" IJI to perform the work even though the Bank's security interest exceeded the value of the Airplane. IJI states that the Bank's actions therefore afforded IJI no security for its work, labor or services. The first counterclaim further states that the Bank concealed the amount of its lien on the Airplane and "by virtue of

the actions of [the Bank]" IJI performed work on the Airplane for which IJI "could not be secured or paid." IJI concludes that as a result of the Bank's "wrongdoing" IJI has lost $247,200 plus interest.

Even assuming, as the Court must, the truth of IJI's factual allegations, the Court holds that the first counterclaim states no cognizable legal theory and, therefore, must be dismissed. As the Bank correctly notes, IJI's responsive papers have not so much as attempted to articulate a legal theory upon which the first counterclaim is based. Under these circumstances, the Court dismisses the first counterclaim for failure to state a legal claim for relief.

### ii. *The Second Counterclaim*

IJI's second counterclaim sets forth a claim for unjust enrichment. Specifically, IJI states that because of its work on the Airplane the Bank became unjustly enriched in the amount of $247,200. In support of the motion to dismiss, the Bank relies on the law of the state of New Jersey. IJI has not taken a position on the choice of law issue. Since the parties agree that the bulk of the work performed on the Airplane took place in the State of New York, it is unclear whether the law of New York or New Jersey applies to IJI's unjust enrichment claim. In either event, however, IJI's claim must fail.

■ The laws of both the State of New York and the State of New Jersey provide for recovery on an unjust enrichment claim only if plaintiff proves that defendant received a benefit at plaintiff's expense and the retention of that benefit would be unjust. *See Associates Commercial Corp. v. Wallia*, 511 A.2d 709, 211 N.J.Super. 231 (1986); *Chase Manhattan Bank v. Banque Intra, S.A.*, 274 F.Supp. 496, 499 (S.D.N.Y. 1967); *Bradkin v. Leverton*, 26 N.Y.2d 192, 309 N.Y.S.2d 192, 195–96, 257 N.E.2d 643, 646–47 (1970).

■ Under the circumstances presented by the case at bar the Court can find no equitable factors supporting IJI's unjust enrichment claim. First, it should be noted that the Bank never contracted with IJI to perform the work done on the Airplane.

IJI freely entered into the contract with LTD and could have taken steps to insure that payment would be made. Specifically, IJI could have insisted upon compliance with its contractual right to partial payment at the inception of the contract and could have required that all payments be made in certified funds. Had IJI properly searched the Airplane's title, it would have become aware of the Bank's lien prior to agreeing to refurbish the Airplane. Finally, it should be noted that the Bank, as well as IJI, was a victim of LTD's weak financial position. The fact that the Bank is an institution that is a larger creditor is not reason enough to invoke the doctrine of unjust enrichment. For the foregoing reasons, the Court holds that IJI has not set forth a claim in unjust enrichment and, therefore, the second counterclaim must be dismissed.

### iii. *The Third Counterclaim*

IJI's third counterclaim seeks recovery of the $247,200 owed under its contract with LTD on the theory that it has a valid mechanic's lien on the Airplane. Relying upon the Supreme Court's holding in *Philko Aviation v. Schacket*, 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983), the Bank argues that IJI's mechanic's lien claim is preempted by federal law. This Court agrees.

In *Philko Aviation* the Supreme Court construed section 503(c) of the Federal Aviation Act, 49 U.S.C.App. section 1403 ("Section 1403"). That statute provides that no instrument affecting the title to any aircraft shall be valid against innocent third parties until the instrument is filed for recordation with the FAA. *See* 49 U.S.C. section 1403(c). In *Philko*, the Court considered whether Section 1403 preempts state laws that validate undocumented or unrecorded transfers of aircraft. When deciding this question the Court looked to the legislative history of the federal statute and determined that Congress enacted Section 1403 to create " 'a central clearing house for recordation of titles so that a person, wherever he may be, will know where he can find ready access to the

claims against it, or liens, or other legal interests in an aircraft.' " *Philko*, 462 U.S. at 406, 103 S.Ct. at 2476 (quoting Hearings on H.R. 9738 before the House Committee on Interstate and Foreign Commerce, 75th Cong., 3d Sess., 407 (1938) (testimony of F. Fagg, Director of Air Commerce, Dep't. of Commerce)). Finding that the validation of unrecorded state liens would defeat the purpose of the federal law, the Supreme Court found a conflict that requires pre-emption of state laws that validate such unrecorded liens. Accordingly, the Court held that such state laws are preempted by the federal act. *Id.* at 410, 103 S.Ct. at 2478.

■ In its attempt to escape the holding in *Philko*, IJI sets forth two arguments. First, IJI relies on *Industrial National Bank of Rhode Island v. Butler Aviation*, 370 F.Supp. 1012 (E.D.N.Y.1974), to support the proposition that an unrecorded state lien is valid. Second, IJI characterizes the Bank as having "actual notice" of IJI's lien and, therefore, not entitled to rely upon the federal act. Neither argument has merit.

IJI's reliance on *Industrial Bank of Rhode Island* is misplaced. That case was decided prior to the Supreme Court's ruling in *Philko* and therefore does not set forth the current state of the law. IJI's "actual notice" argument is equally misplaced. In this case the Bank obtained its security interest in the Airplane before IJI commenced its work. Accordingly, the Bank could not have had actual notice of IJI's lien when extending the loan to LTD. If this Court were to accept IJI's actual notice argument, then notice given *at any time* would invalidate the provisions of Section 1403. Since Congress could not have intended such a result this Court rejects IJI's actual notice argument and holds that the Bank is entitled to the protection of Section

1403. For this reason and the reasons stated above the Court holds that Section 1403 preempts any state law validating an unrecorded lien. Accordingly, the Court grants the Bank's motion to dismiss the third counterclaim.

### III. *Summary Judgment*

In addition to moving to dismiss IJI's counterclaims, the Bank has moved for the entry of summary judgment in its favor. Summary judgment is warranted only where there exists no genuine issue as to any material fact and the moving party is entitled to the entry of judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987). The burden is on the moving party to clearly establish the absence of a genuine issue as to any material fact and the Court must resolve all ambiguities in favor of the non-moving party. *Winant v. Carefree Pools*, 709 F.Supp. 57, 59 (E.D.N.Y.1989).

In support of the motion, the Bank contends that no issue of material fact prohibits a finding that its lien on the Airplane is superior to any lien of IJI. IJI makes two arguments in its papers filed in opposition to the Bank's motion for summary judgment.[1] First, IJI abandons the laws of the State of New Jersey and argues that it has a possessory lien pursuant to New York law. Second, IJI argues that the equities require that it be allowed recoverey on its lien.

■ As noted above, a lien affecting an interest in an aircraft becomes valid only when the lien is filed for recording with the FAA. 49 U.S.C. section 1403(c); *Philko*, 462 U.S. at 409–10, 103 S.Ct. at 2478–79. Although the filing of a lien with the FAA is necessary, the first creditor to

---

1. IJI has labelled its brief as a memorandum of law *in support* of a motion for summary judgment. Although IJI has not filed a notice of motion for summary judgment, it has requested that the Court grant IJI summary judgment, "upon its own motion." By failing to file a notice of motion IJI has not properly placed the issue of granting it summary judgment before the Court. In addition, IJI has failed to comply with the local rules of the Court that require the filing of a statement of material facts not in dispute that entitle the moving party to the entry of judgment. In view of this Court's disposition of the Bank's motions, IJI's procedural defects are rendered irrelevant.

file is not necessarily assured priority. This is only the case where a single lien is recorded. In such a case, the recorded lien, being the only valid lien, is assured of priority. Where, as here, however, there is more than one recorded lien the priority of those liens is determined by reference to applicable state law. *Philko,* 462 U.S. at 413, 103 S.Ct. at 2480; *Aircraft Trading and Services, Inc. v. Braniff, Inc.,* 819 F.2d 1227, 1231–32 (2d Cir.), *cert. denied,* 484 U.S. 856, 108 S.Ct. 163, 98 L.Ed.2d 118 (1987). Since the only lien recorded by IJI was the lien described in the November Notice, the issue raised by this summary judgment motion is whether that lien is entitled to priority over the Bank's security interest.

In support of its motion for summary judgment the Bank argues that the November Notice must be declared invalid. Specifically, the Bank argues that no lien can arise under the New Jersey lien statute because: (1) the New Jersey statute does not cover interior decoration of an airplane; (2) no work was performed in the State of New Jersey; (3) IJI failed to file the lien within ninety days of the completion of the work and (4) the November Notice contains knowingly false statements.

■ After reviewing thoroughly the parties' briefs and affidavits the Court is of the opinion that the resolution of certain factual disputes will lead to a speedy disposition of this litigation. Specifically, a finding that no work was performed on the Airplane in New Jersey or that IJI failed to file the lien within ninety days of completion of its work would result in the invalidation of the November Notice. Accordingly, the Court will reserve decision on the Bank's summary judgment motion at this time. Instead the Court will hold a hearing to determine the location of and dates upon which IJI's work on the airplane was performed.

## CONCLUSION

The Bank's motion to dismiss IJI's counterclaims is granted. The parties are directed to contact the Court within ten days of the date of this Order for the purpose of scheduling a hearing.

SO ORDERED.